## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK
### BUFFALO DIVISION

| | |
|---|---|
| Dameka Jones, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Kellogg Sales Company,<br><br>Defendant | 1:23-cv-00049<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Kellogg Sales Company ("Defendant") represents that a bowl of Smart Start gets a roughly equal amount of its 11 grams of protein from cereal and added milk ("Product").




2. Recent studies have highlighted the role of protein in regulating metabolism and weight management, along with maintaining stable bodily functions in the aging process.

3. Aware of these benefits, a growing number of consumers are seeking foods with significant amounts of protein.

4. According to Nielsen, the marketplace has responded to this demand, as annual sales for products touting their protein content exceeds $16 billion.

5. The Product's prominent claim of "11g of Protein" appeals to these consumers, who realize a significant percentage, or 6 grams, come from added milk.

6. However, the representation that the Product contains an almost equivalent amount of protein, 5 grams, from the cereal, is misleading, shown by the Nutrition Facts on the side panel.



7. Though the first and second columns confirm the front label representations that the cereal by itself and with added milk contain five and six grams of protein per serving, their percentage contributions to the Product's protein content is significantly different from what

2

consumers expect.

8. This is shown by how the cereal's five grams of protein are equivalent to four percent of this nutrient's Daily Value ("% DV") while the eleven grams, with added milk, is 16%.

9. The six grams of protein from added milk supplies 12% of the daily value for protein in contrast to the 4% from the cereal alone.

10. In contrast to the front label indicating the protein contribution from the cereal and milk is roughly equivalent, the former provides only 25% of the Product's protein content while 75% is provided by milk.

11. As a result of the false and misleading representations, the Product is sold at a premium price, $4.49 for 18.2 oz (515g) excluding tax and sales.

## Jurisdiction and Venue

12. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

13. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

14. Plaintiff is a citizen of New York.

15. Defendant is a Delaware corporation with a principal place of business in Michigan.

16. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

17. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here from thousands of grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores and online in the States Plaintiff seeks to represent.

18. Venue is in this District with assignment to the Buffalo Division because Plaintiff resides in Erie County and a substantial part of the events or omissions giving rise to the claims occurred here, including her purchase and use of the Product, and her awareness the representations were misleading.

## Parties

19. Plaintiff Dameka Jones is a citizen of Buffalo, Erie County, New York.

20. Defendant Kellogg Sales Company is a Delaware corporation with a principal place of business in Battle Creek, Calhoun County, Michigan.

21. Kellogg's is one of the largest food manufacturers in the world.

22. Kellogg's founding was based upon its desire to improve the health of medical patients, leading to the innovative corn flakes cereal.

23. For over a hundred years, American families have trusted Kellogg's products, which have become part of the fabric of American life.

24. Consumers trust Kellogg's because they know its brand represents a commitment to nutrition, backed by science.

25. Defendant spends millions of dollars each year on consumer research to identify attributes of products consumers want and will pay more for.

26. Defendant's studies confirm that consumers increasingly seek foods which contribute significant amounts of protein to their diets for reasons including metabolism and maintaining the body's systems.

27. Plaintiff purchased the Product at stores including but not necessarily limited to Walmart, 2500 Walden Ave, Cheektowaga, New York 14225 in the fall and/or winter of 2022, and/or among other times, at or around the above-referenced price.

28. Plaintiff is similar to the majority of consumers who seek to consume more protein for its health benefits.

29. Plaintiff relies on eye-catching and prominent graphics on the front label of foods to make quick decisions when shopping for groceries.

30. Plaintiff saw the front label graphic that the Product provided 11g of protein, 6g from milk and 5g from cereal, so she believed their protein contribution was roughly equivalent.

31. Plaintiff did not discover the protein contributed by the cereal was only a quarter of the Product's total protein content.

32. Plaintiff paid more for the Product than she would have had she known the representations and omissions were false and misleading, or would not have purchased it.

33. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

## Class Allegations

34. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of North Dakota, Wyoming, Idaho, Alaska, Iowa, Mississippi, Arkansas and Utah who purchased the Product during the statutes of limitations for each cause of action alleged.

35. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

36. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

37. Plaintiff is an adequate representative because her interests do not conflict with other members.

38. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

39. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

40. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## New York General Business Law ("GBL") §§ 349 and 350

41. Plaintiff incorporates by reference all preceding paragraphs.

42. Plaintiff expected the Product's protein contribution from the cereal and milk was roughly equivalent.

43. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Violation of State Consumer Fraud Acts
## (Consumer Fraud Multi-State Class)

44. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

45. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

46. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose</u>
<u>and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

47. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that its protein contribution from the cereal and milk was roughly equivalent.

48. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

49. Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet their needs and desires, which was the consumption of foods that were significant sources of protein.

50. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant its protein contribution from the cereal and milk was roughly equivalent.

51. Defendant's representations affirmed and promised that the Product's protein contribution from the cereal and milk was roughly equivalent.

52. Defendant described the Product so Plaintiff believed its protein contribution from the cereal and milk was roughly equivalent, which became part of the basis of the bargain that it would conform to its affirmations and promises.

53. Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

54. This duty is based on Defendant's outsized role in the market for this type of product, the leading seller of breakfast cereals.

55. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

56. Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

57. Defendant received notice and should have been aware of these issues due to complaints by consumers and third-parties, including regulators and competitors, to its main offices and through online forums.

58. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

59. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if its protein contribution from the cereal and milk was roughly equivalent.

60. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected that its protein contribution from the cereal and milk was roughly equivalent, and she relied on its skill and judgment to select or furnish such a suitable product.

### Fraud

61. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that its protein contribution from the cereal and milk was roughly equivalent.

62. Defendant's emphasis on the Product's protein content was based on its detailed knowledge of consumer demand and how it could use these facts to drive sales.

### Unjust Enrichment

63. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek

restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;

2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable attorney and expert fees; and

4. Other and further relief as the Court deems just and proper.

Dated:   January 19, 2023

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

James Chung
James Chung Law Office
4322 216th St
Bayside NY 11361
(718) 461-8808
jchung_77@msn.com